UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTOINE MCCLENDON,  ] | |
|     Plaintiff, ] | |
| ] | |
| vs. ] | 1:11-CV-01270-LSC |
| ] | |
| MICHAEL J. ASTRUE, ] | |
| Commissioner of Social Security ] | |
|     Defendant. ] | |

MEMORANDUM OF OPINION

I. Introduction

The claimant, Antoine McClendon, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI"). McClendon timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

McClendon was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has at least a high school education. (Tr. at 16.) His past work experience includes employment as a stocker, forklift operator, and automobile parker. (Tr. at 16.) McClendon claims that he became disabled on January 17, 2006

(Tr. at 27), due to back and right leg pain, arthritis, diabetic foot ulcers, swelling in the legs and feet, diabetes, and depression. (Tr. at 14, 32, and 136.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a

determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that McClendon meets the nondisability requirements for a period of disability and DIB and was insured through December 31, 2007. (Tr. at 12.) He further determined that McClendon has not engaged in substantial gainful activity since January 17, 2006, the alleged onset of his disability. (Tr. at 12.) According to the ALJ, Plaintiff's "diabetes mellitus and status post right foot surgery secondary to diabetic foot ulcers" are considered "severe" based on the requirements set forth in the regulations. (*Id.*)

However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 13.) The ALJ determined that McClendon has the residual functional capacity to perform a reduced range of medium work, provided Plaintiff "avoid[s] exposure to extreme heat and cold, humidity, hazardous machinery, and unprotected heights." (Tr. at 14.)

According to the ALJ, McClendon is unable to perform any of his past relevant work, he is a "younger individual," and he has "at least a high school education," as those terms are defined by the regulations. (Tr. at 16.) Even though Plaintiff cannot perform the full range of medium work, the ALJ used Medical-Vocation Rule 203.29 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as cashier, fast food worker (non cook), and hand packer. (Tr. at 16-17.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from January 17, 2006, through the date of this decision." (Tr. at 17.)

II. Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "[d]espite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover,

failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion

Plaintiff claims: (1) that the ALJ failed to properly evaluate the credibility of his complaints of pain, and (2) that the ALJ improperly evaluated the medical records showing the severity of his diabetic neuropathy. (Doc. 9 at 6-9.)

A. Medical History and Failure to Follow Prescribed Treatment

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms as long as he "articulate[s] explicit and adequate reasons for

doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements"). Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is 'not enough to enable [the district court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'" *Id.* (internal quotations omitted).

In this case, the ALJ found that Plaintiff's multiple hospitalizations for diabetic foot ulcers, intractable vomiting and abdominal pain, other gastrointestinal complaints, and diabetes mellitus (Tr. at 12-13, 15-16) could reasonably be expected to cause the alleged pain symptoms, yet he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 15.)

1. Plaintiff's nausea, vomiting, and gastrointestinal complaints

In making his decision, the ALJ acknowledged Plaintiff's hospitalizations for gastrointestinal complaints, nausea, and vomiting. The ALJ noted that Plaintiff "has a history of intractable vomiting and abdominal pain" arising from Plaintiff's uncontrolled type II diabetes mellitus, but the ALJ found that Plaintiff "has made no allegations that these problems prevent or limit him from engaging in work activity nor have they lasted at a disabling level for twelve consecutive months." (Tr. at 13, 15.) The medical record substantiates these findings. Although Plaintiff was hospitalized for intractable vomiting, nausea, and abdominal pain in May 2008, October 2008, and May 2009, "an upper GI endoscopy, abdominal CT scans and ultrasounds, and abdominal x-rays were taken and were all negative." (Tr. at 13, 273, 309, 318, 335, 339, 354, 357, 382.) Plaintiff was diagnosed with biliary dyskenesis on May 28, 2009, after more complaints of nausea, vomiting, and abdominal pain, and a laparoscopic cholecystectomy was subsequently performed. (Tr. at 335-38.) Plaintiff tolerated the procedure well, and there was "no evidence of complications, and he left the operating room in satisfactory condition." (Tr. at 338.) The medical evidence and all of Plaintiff's negative test results establish that his symptoms could not "reasonably be expected to give rise to the claimed pain," and the ALJ has provided adequate

reasons for discrediting Plaintiff's pain testimony. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

### 2. Diabetic foot ulcers

The ALJ also found that Plaintiff's allegations regarding his "debilitating limitations secondary to diabetic foot ulcers and right lower extremity pain and swelling . . . are not supported by the objective medical evidence." (Tr. at 15.) The ALJ specifically addressed the August 2006 and the May 2008 surgeries, as well other medical records relating to Plaintiff's lower extremities. (Tr. at 12, 15.) Regarding the right foot ulcer surgery on August 22, 2006, Dr. John Richards noted that there was "no destruction of the bone or infection of the bone," and that the ulcer had essentially healed with no obvious evidence of any infection. (Tr. at 183, 188, 190.) As for the surgery on May 5, 2008, the ALJ noted "there were no post-operative complications, limitations or complaints of right foot or leg pain." (Tr. at 15, 317.)

During an emergency room visit in September 2007 for a right thigh contusion, an evaluation of Plaintiff's lower extremities revealed no indication of tenderness or complications relating to Plaintiff's right foot. (Tr. a 235.) The ALJ also noted that "with the exception of an antalgic gait, a physical examination of the entire right lower extremity was normal and [] the claimant had no vascular, motor, sensory, or

neurological lower extremity deficits." (Tr. at 15.) Although Plaintiff complained of muscle spasms, swelling in his right thigh and right leg, and weight bearing pain from September 13, 2007, through September 27, 2007 (Tr. at 241-43), a duplex study of Plaintiff's right lower extremity performed at Citizens Baptist Medical Center found there was "no evidence for deep venous thrombosis" and a "normal appearance of flow" in the veins of the right leg, and an x-ray of Plaintiff's right lower extremity was negative. (Tr. at 212, 239, 246.)

During the Consultative Examination, performed on December 11, 2007, by Dr. Amy Doyle, Plaintiff claimed pain in his "back, legs, hands, elbows, and wrists bilaterally" occurred on a daily basis and "is much worse with cold weather and when [] sedentary, at which time his joints become very stiff and painful." (Tr. at 250.) Yet, Dr. Doyle noted Plaintiff's foot ulcer as "currently well-healed," that Plaintiff "adamantly denies joint swelling, erythema or edema in any of the effected sites," and that Plaintiff's extremities are "without clubbing, cyanosis or edema." (Tr. at 250-51.) Finally, Dr. Doyle indicated that aside from Plaintiff's "normal, but somewhat slow gait," the Plaintiff's strength testing revealed a right lower extremity hip flexors "approximately 4/5 limited secondary to pain," and "the remainder of the right lower extremity is 5/5 throughout." (Tr. at 251-52.)

Further examination of Plaintiff's right lower extremities during three hospital visits on October 2008, May 2009, and July 2009 also substantiate the ALJ's conclusion. In October 2008, Plaintiff's medical records note that his extremities are non-tender, there is no pedal edema, there is a normal range of motion, and there is a lack of any cyanosis, rash, or lesions. (Tr. at 313-14.) In May of 2009, Plaintiff's medical records indicate a lack of tenderness, full range of motion, and no pedal edema in his extremities. (Tr. at 286, 288, 296, 304, 307.) In July 2009, Plaintiff's medical records make no indication of any tenderness or other complications of Plaintiff's extremities. (Tr. at 373.) Finally, Dr. Huang, Plaintiff's treating physician, noted in November 2009 that there is no edema in Plaintiff's extremities and did not mention any tenderness or other complications associated with Plaintiff's extremities. (Tr. at 384.) Based on the entire case record, it is evident that the ALJ gave explicit and reasonable reasons for rejecting Plaintiff's testimony, and the ALJ's finding that Plaintiff's "allegations are not supported by the objective medical evidence" is supported by substantial evidence. (Tr. at 15.)

### 3. Diabetes Mellitus

The ALJ also noted that "regarding the claimant's uncontrolled type II diabetes mellitus, the medical evidence establishes that the claimant has consistently been non-

compliant with his diabetic treatment regimen and hospitalization records show that his blood glucose level is easily stabilized with medication." (Tr. 15.) The ALJ also noted that "while the claimant alleges his non-compliance is due to lack of finances, there is no indication in the medical evidence that he even attempted to obtain medical attention or medication from indigent health care facilities or from a free county health care clinic." (*Id.*)

Social Security Ruling (SSR) 82-59 states that "individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment." SSR 82-59 at 1. A justifiable cause exists when "the individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable." *Id* at 4. "Where the treating source has prescribed treatment clearly expected to restore ability to engage in any [substantial gainful activity] (or gainful activity, as appropriate), but the disabled individual is not undergoing such treatment, appropriate development must be made to resolve whether the claimant or beneficiary is justifiably failing to undergo the treatment prescribed." *Id.* at 2. Furthermore, "all possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must

be explored," and "contacts with such resources and the claimant's financial circumstances must be documented." *Id.* at 4.

Although Plaintiff testified that he wasn't taking his medications because he "didn't have the money to go out and buy it" (Tr. at 31), Plaintiff stated on August 18, 2006, that he "stopped his medications thinking he would be okay without them," and "he was told that if he loses weight, he will be changed to pills by mouth, but he never went back to his doctor and decided to stop his medications on his own." (Tr. at 207-08.) Furthermore, the ALJ noted that Plaintiff "testified that with the help of his brother, he is able to purchase his medications and his diabetes and hypertension is currently under control." (Tr. at 15.) Plaintiff's testimony that he could not afford his medications is therefore inconsistent with the record.

The record also reveals that Plaintiff's diabetes was not consistently uncontrolled. Plaintiff's diabetes was listed as uncontrolled in August 2006, but that was due to his voluntary decision to stop taking his medications. (Tr. at 206-08.) In January 2007, Plaintiff's diabetes was listed as "controlled (better)," and his hypertension was stable. (Tr. at 245.) Although Plaintiff's diabetes was uncontrolled on September 20, 2007, Plaintiff reported "his diabetes is currently well-controlled and has not had, to his knowledge, any renal or ophthalmologic complications of this

disease" less than three months later in his Consultative Examination. (Tr. at 247, 250.) In May 2008, Dr. Huang's records indicate Plaintiff's diabetes was poorly controlled, but Plaintiff's "blood sugar was well controlled during his stay in the hospital." (Tr. at 275-81.)

In October 2008, Plaintiff's medical records show that his diabetes was uncontrolled (Tr. at 369), but it is also noted that his blood sugar readings were average (Tr. at 366), and on November 5, 2008, Plaintiff's medical records note that his blood sugar was running under 200 and he was checking his blood sugar twice daily. (Tr. at 365.) In May 2009, Plaintiff was listed as noncompliant due to a lack of insurance and received treatment for abdominal pain, nausea, and vomiting, but once he received IV fluids his symptoms were resolved and he became better. (Tr. at 379.) Finally, on July 15, 2009, Plaintiff's diabetes is listed as poorly controlled due to a lack of insurance (Tr. at 377), but two weeks later, on July 29, 2009, his diabetes is listed as controlled. (Tr. at 373.)

It is evident that the ALJ's decision is not based upon Plaintiff's noncompliance merely due to a lack of finances. Instead, the ALJ's opinion is based upon Plaintiff's testimony that he is able to afford the medication with the assistance of his brother, and Plaintiff's statement to his doctor that he stopped taking his medications, which

conflicted with his testimony that he was noncompliant because he could not afford his medications. Also, the record as a whole indicates that Plaintiff's diabetes mellitus was only uncontrolled on occasion, and his blood glucose level and blood pressure were easily stabilized with medication. Thus, the ALJ's determination that Plaintiff "alleges a greater degree of debilitating limitations than what the objective medical evidence can support" is supported by substantial evidence, and the ALJ's consideration of Plaintiff's noncompliance in conjunction with his symptoms, allegations of pain, as well as his "age, education, work experience, and residual functional capacity" when finding Plaintiff "not disabled" was proper. (Tr. at 14-17.)

### B. Diabetic Neuropathy

Plaintiff also claims that the ALJ "failed to credit the medical records which noted that Plaintiff had severe diabetic neuropathy" when the ALJ stated "the medical evidence contains no diagnostic testing such as nerve conduction studies or electromyography to determine the extent and/or severity of the claimant's neuropathy." (Doc. 9 at 8, Tr. at 16.) Specifically, Plaintiff states that it is clear that he "cannot afford such tests because of his lack of income and lack o[f] insurance." (Doc. 9 at 8.)

1. No Error at Step Two

The Eleventh Circuit stated in *Heatly v. Comm'r of Soc. Sec.* that "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." 382 Fed. Appx. 823, 825 (11th Cir. 2010) (*citing Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that step two acts as a filter and that the finding of any severe impairment is enough to satisfy the requirement of step two)). Therefore, when the ALJ finds at least one impairment to be severe at step two, any error caused by not recognizing all severe impairments is harmless. *Id.* In the instant case, the ALJ found in Plaintiff's favor at step two when he determined that Plaintiff's "diabetes mellitus and status post right foot surgery secondary to diabetic foot ulcers" were severe impairments, and there is no error for not finding Plaintiff's diabetic neuropathy to be a severe impairment. (Tr. at 12.)

2. Plaintiff's Burden to Show Work-Related Limitations

Even assuming that it would be possible for the ALJ to commit error at step two after having found at least one severe impairment, Plaintiff still bears the burden of showing why his diabetic neuropathy should have been considered severe. To establish that an impairment is severe, Plaintiff bears the burden of proving the inability to perform his previous work. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir.

1990). Although Plaintiff cites his past medical history indicating he suffers from diabetic neuropathy, the mere diagnosis of impairments "does not reveal the extent to which they limit [his] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)."

Rather, the Social Security Act "defines 'disability' in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace." *Bowen v. Yukert*, 482 U.S. 137, 146 (1987) (quoting *Heckler v. Campbell*, 461 U.S. 458, 459-60 (1983)). As stated in the regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Thus, "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The claimant bears the burden of demonstrating the existence of such a disability. *See Carnes v. Sullivan*, 963 F.2d 1215, 1218 (11th Cir. 1991).

The first indication that Plaintiff suffered from diabetic neuropathy in the medical evidence was on May 28, 2009 (Tr. at 335). This condition is noted twice more on July 15, 2009 (Tr. at 377), and November 29, 2009 (Tr. at 384). Plaintiff

argues that he could not afford the tests because of his "lack of income and lack o[f] insurance." (Doc. 9 at 8, Tr. at 31.) The medical records from the time he was diagnosed with diabetic neuropathy also affirm the fact that he was noncompliant because he had no insurance on July 15, 2009 (Tr. at 377), and the record indicates he could not afford his medicines on November 29, 2009 (Tr. at 384). Contrary to Plaintiff's allegations, however, nothing in the record states that Plaintiff did not seek additional testing due to a lack of finances. Furthermore, none of the doctors that evaluated Plaintiff recommended that he have additional testing done, or stated that Plaintiff refused to agree to additional testing due to a lack of finances.

Finally, the medical records reveal that Plaintiff never complained that his diabetic neuropathy was causing him disabling pain in any of his hospital or doctor's visits, and nothing in the record supports an inference that his diabetic neuropathy "can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 1991). Also, an ALJ can properly reject alleged pain as disabling if Plaintiff's subjective complaints are inconsistent with the medical record. *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005). On May 28, 2009, Plaintiff stated he felt "bad all over, badly nauseated, occasional vomiting," but stated nothing about any pain or any limitations arising from his neuropathy. (Tr. at 335.) Yet, during all of

the hospital visits and follow-ups after diabetic neuropathy appears in his medical history, Plaintiff never complains of any pain or limitations resulting from his diabetic neuropathy. (Tr. at 362, 363, 372, 373, 377, 384.)

A review of the record indicates that the ALJ's refusal to find Plaintiff's diabetic neuropathy severe and his refusal to find pain arising from Plaintiff's diabetic neuropathy disabling was not based on Plaintiff's inability to afford additional testing, but on a lack of any indication that the pain was severe. With no evidence indicating Plaintiff was suffering disabling pain or that his diabetic neuropathy was severe, the ALJ's rejection of Plaintiff's claims, the ALJ's determination that Plaintiff "alleges a greater degree of debilitating limitations than what the objective medical evidence can support," and the ALJ's finding that "the medical evidence contains no diagnostic testing such as nerve conduction studies or electromyography to determine the extent and/or severity of the claimant's neuropathy" is supported by substantial evidence. (Tr. at 16.)

IV. Conclusion

Because the Court finds that the Commissioner's final decision applies the proper legal standards and is supported by substantial evidence, the decision of the

Commissioner of the Social Security Administration is affirmed. A separate order will be entered.

Done this 6th day of July 2012.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458
